Ready for your argument. May I have five minutes for my rebuttal? Thank you. May it please the court, counsel. Kyle Estes was killed by the negligence of an underinsured motorist while driving his employer's vehicle. Where was the accident? Was it in California? No, I believe it was in Northern Oregon. Oh, Northern Oregon, okay. Gosh, don't ask me the facts. I thought this was a question of law. It is a question of law, but I always like to know. Thank you, thank you, Your Honor. So the plaintiff, his widow, sought UIM benefits from the insurer, State Farm. The insurer denied the benefits under the position that the work vehicle is furnished for his regular use and it fit within that furnished for regular use exclusion. Plaintiff asked this court to recognize two things in the alternative. First, that furnished for regular use exclusion is overbroad and therefore unenforceable under Oregon law. Second, the employer's limitations on the vehicle created genuine issues of material fact as to whether or not this was actually furnished for his regular use. I'll start off with the enforceable as a matter of law point, Your Honors. Oregon statutes require every auto policy, including the two State Farm policies here, to carry uninsured or underinsured motorist benefits. Oregon revised statute 742504 provides a model minimum policy that all policies are tested against to make sure that they have at least this much coverage and not coverage that disfavors the insured in some way. Right, right there. It has to disfavor this insured, right? And your argument is that it doesn't. Your argument is that if you can show any over breadth, that's my word, but I think we know what you're talking about if I could use that. Anyway, the subject policy falls short of the model policy in the statute that your client gets to take advantage of that. I can't find Oregon case law that where Oregon has applied that rule that way. Your Honor, so the answer is no, it doesn't have to disfavor this insured. It has to disfavor coverage against the Oregon insurance buying public. That's your position, and I'm trying to figure out where, and you have some, what I'm gonna call sound bites. You have some case law language that reads consistently with that, but has Oregon ever, any Oregon court ever applied that language that way? Well, I think the effect of Erickson is that very thing, and I think what this court saw with Erickson in the Smith case, and what happened in Erickson. So wait a minute, right there, you know that opposing counsel's argument is that you misread Erickson because the plaintiff in Erickson did fall within the class of folks who were directly impacted by the coverage issue there. What is your response to that? The point in Erickson, Your Honor, is that the plaintiff had no coverage, basically under the policy that was provided to the plaintiff. And then, that's here. That's the furnished for regular use policy. And so we have no coverage. And then the next question was, is well, because they fall within this exclusion, it's not enforceable because it's disfavors insured. And so what happened in Erickson at the Court of Appeals, they said, well, it's okay, because even though they don't have coverage here under the policy, and they don't have coverage, they also don't have coverage under the statute. So what we'll do is we'll reform the contract, and we're gonna insert the statutory terms in. Supreme Court reversed and said, no. Once it's unenforceable, because it's overbroad, it disfavors the Oregon insurance buying public. Once that happens, you erase the provision, basically, and then you leave the coverage as it is, and you do not reinsert the statutory terms. But that's a different question from whether you look at hypotheticals that don't affect your insurance. Here, you're relying, for example, on how you say motorcycles are treated under the policy, but she didn't have a motorcycle. There was no motorcycle. So why are we worrying about how motorcycles are being treated? I appreciate what the disconnect that the court is observing, but let me take a step back and explain the way this works, is that insurance policies have to be applied this way because the insurance buying public all the time is getting these exclusions put against them, and they don't actually, they accept them. And so if we don't interpret the way plaintiff asks the court, what happens is you motivate insurers to draft aggressive exclusions. But what if Erickson supports that way, i.e. having a hypothetical that doesn't affect your plaintiff? Because it's a policy exclusion that disfavors the Oregon insurance buying public. But what if Erickson said, or any other case, sets up that kind of hypothetical overbreath? I mean, it's like First Amendment overbreath. It's looking at different, how it would affect different insurance. It's not an as-applied analysis, Your Honor.  or it restricts coverage in a way that is expected under the statute. And this is doing that. It's restricting coverage in a way that's expected under the statute. It's restricting coverage in a way that does affect this insured, not particularly for this claim, but they would not have coverage if they took on any of those facts. Isn't there- And they pay for- Go ahead. They pay for coverage. Right. They pay for coverage that's supposed to be there. It wasn't there. Okay, but- That whole time that they own the policy, and because of that, the exclusion that removes that coverage is no longer enforceable. And under- It's not why they were denied benefits here. I understand what Your Honor's saying. I mean, I'm not missing that point. But isn't that the first sentence in the statute? It says, every policy shall provide uninsured motorist coverage that in each instance- Yeah, keep reading. Is no less favorable in any respect to the insured or the beneficiary, than if the- The insured or the beneficiary. And the insured is a defined term. Your Honor, it is less beneficiary to this insured, because if this insured, we're not talking about this case- If that had happened one day, if there had been the accident with the motorcycle one day, they wouldn't have been covered, right? Yeah. Okay. And they bought coverage and it wasn't there. It was not beneficial to them, because that coverage was not there for them as well. I'm sorry. It just- Counsel, my question- Yeah, my question was, I don't understand the motorcycle analogy. Isn't there a whole separate insurance policy for motorcycles? Well, that's the problem, is that you can't have that excluded within an uninsured motorist policy for newly acquired motorcycles or substitute motorcycles. So for example- But it's a different, I guess my question is, it's a different policy. It's not a four wheel vehicle policy. It's a two wheel or three wheel motorcycle policy. And it's a different breed of insurance policy. I think what they could do very easily, Your Honor, is that they could say, this is a car policy. And for that reason, we're not going to insure it as your named vehicle, a motorcycle on this policy. You have to get a separate policy for that. Right. And isn't that what happened here? Because they don't have a motorcycle, so they didn't need insurance for a motorcycle. I appreciate that, Your Honor. But the coverage that was required under the statute is this. I can sell my car, or I can today go out and buy a motorcycle, because I don't have a motorcycle policy. Right. I can drive it- But then you go get a motorcycle policy to insure it. That's what I did when I bought my motorcycle, because it wasn't covered under my four wheel vehicle policy. What's required under the statute, Your Honor, is when I get that motorcycle, I'm entitled to coverage when I drive it off the lot, whether I call the insurance company or not. Counsel, the problem I'm having with your argument here is that if I have a four wheel vehicle motorcycle policy, it doesn't cover my boat, does it? Because boat's not defined as a vehicle under the statute. And under the statute, a vehicle is a four wheel vehicle for this type of policy, whereas a motorcycle policy is a two wheel or maybe a three wheel. Under the statute, the vehicle is anything on the highway, motorcycles and vehicles. We all own coverage under- It wouldn't cover a commercial truck, would it, if I went out and bought an 18 wheeler? This turns on what the definition of- I'm sorry. Go ahead. I don't mean to cut you off, I'm sorry. Well, I mean, it's a different insurance policy. Your Honor, the insurance policy has a coverage that exists for substitute and newly acquired vehicles in general. Including an 18 wheeler? Well, potentially- If I went out and bought a tractor trailer rig in a trailer? The newly acquired and substitute vehicle can be defined to a certain extent by the insurance company, but it cannot be defined a way to leave the basic definition of vehicle away. And so, I don't have the specific vehicle definition here, but it means every device by which any person may be transported on a public highway. And there is exclusions, actually, for- In fact, can we go back to the Erickson problem? These conceptual problems about why are we talking about motorcycles, right? We're talking about- I'm sorry. Excuse me. In Erickson, the way in which the policy was asserted to be less favorable affected the insured in that case. Right? Yes. Okay, is there any case in which you didn't? Not that I know of in neither this one either. What we're having disconnect here, Your Honor, is that they did not give coverage that's required under the policy to our insureds. Whether it's used right here or not, that coverage was gone from the policy. Judge Berzon is asking a different question. Let's try it one more time. It affected the issue in the case. Right. It affected whether they were covered for the, in the case itself, i.e., they said she wasn't covered because of something in the policy, and that was asserted to be less favorable to her than the required policy under the model policy. Yes. Not because of some hypothetical something else that didn't happen, but because of something that did happen. Right? In Erickson. Right, Your Honor. All right, now, here, there's nothing about motor, there's no motorcycle problem, there's no substitute vehicle problem. That isn't why she's being denied coverage. She's being denied, they're being denied coverage because they have, this vehicle was available to them for frequent use or whatever the term is. Right, right. So, it's just irrelevant to why she was denied coverage. Now, is there, this is what Judge Christian asked you at the outset. Is there any case in which the coverage issue is being analyzed in the way that you want to analyze it, in a way that is completely extraneous to the issues in the case? Well, it's. Yes or no? The answer's, your question, no, there's not the case the way you're phrasing it. I agree, Your Honor. And I think what we have to think about, though, but it all comes down to how you view it. The exclusion is furnished for regular use. They are excluding coverage under their furnished for regular use exclusion. Now, the question for this court is, is that furnished for regular use exclusion enforceable? If we go back to Erickson, they were excluding coverage under their other insurance policy, exclusion. Erickson said that was too broad because it disfavors insureds, including this insured. But guess what? The policy, just like here, the policy just, I'm sorry, Your Honor, I cut you off. But the difference is that it was excluding that insured. It wasn't just excluding some insured who might have a motorcycle. But the policy, the model policy also didn't exclude that insured either in Erickson. That's the point. In Erickson, they said, well, the model policy says this is okay, too. We can exclude this insured as well. That's what Erickson said. And then what happens, the court of appeals said, which sounds like where this court's going right now, or with the questions, maybe it's not where the court's going, but where the court's asking these questions, is that the court of appeals said, well, it would be fine under the model policy if we just use the model policy. So we're just gonna insert that right here. And we would be fine under the furnished for regular use exclusion under the model policy here as well. But then the Oregon Supreme Court said, no. Do you wanna talk about the actual issue in the case, which is frequent use? Yeah, frequent use. You mean not the exclusion? Whether there's a question of fact about the applicability of the exclusion. If it's not barred as a matter of law. Thank you, Your Honor. Now, what does regular use mean? And how do we interpret that word for this case? And so regular use, we have to look at what we have under Hoffman. We have to look at what we have under Kerrigan. We interpret these things. If there's any reasonable, plausible interpretation for that could benefit the insured, we have to interpret that way. Now again, here there's a conceptual question, which is, does Hoffman apply, or because we're looking at the model policy, does the model policy statutory interpretation apply? The answer is, to the extent you look at this exclusion, it's not tracking the statutory terms identically, then you would apply Hoffman. To the extent that we think it's this kind of mixed question where you're borrowing statutory language and you're mixing with the other language, then you would say Kerrigan applies for your interpretation of statute, but the test is the same. If there's a reasonable, plausible interpretation, you're gonna go towards the insured. And so with regard to the regular use, what does that mean? It means normal use. And what does normal use mean in the context of the vehicle? It's to use at will, to use at your desire, as they talked about in Wallace. But there are on-point cases, are there not, particularly Anderson? There's a court of appeals case, an intermediate court, who was not applying Hoffman, was not applying Kerrigan, and took a position with regard to, we're gonna interpret it this way. That's not how we- So essentially you're saying that we should predict that the Oregon Supreme Court would not follow Anderson now. That's what you're saying. Anderson is not Oregon Supreme Court. That's what you're saying. I know, but- I'm sorry, I misunderstood. That the Oregon Supreme Court would not follow Anderson, that we should predict that they would not follow Anderson. Well, if you look at, I would say they would not follow, not only because of Kerrigan and Hoffman, but also because of Wallace. Wallace says regular use means to use at your desire, or as the user of the vehicle might use at will. And this is a real problem. How does that definition not apply here? Because it's not, there's some restrictions, Your Honor. For example, the policy of the employer says, you don't use for your regular use, it says you use for union business. Right, and if you wanna use it for regular use, then you have to report the mileage and track it, because it's gonna be attributed to you as additional income. But you're not allowed to use it for your own use, unless you can show that it's more efficient. But why doesn't that fall within the definition of Wallace? The phrase, quote, furnished for regular use, end quote, as used in the context does not apply to the manner, does not imply the manner of use, but implies a right to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile, in this case, the union, that the insured could have the use of the particular automobile, or perhaps any automobile of the other at such times as he desired. At such times as he desired, and I think that's what it comes down to, the policy. He kept the car at his house, he could use it anytime he wanted. No, the policy that's in the record, Your Honor, says he's supposed to use this for union business, and he's not supposed to use it for his personal use, and he's actually, he can't even use his personal car during the driving for work, because they said, you're not allowed to, you have to use this car specifically for work. And what we have here is, there's these restrictions, and what we have here is this problem, because we can't buy insurance. I mean, this is a problem for first responders. This UIM coverage is just gone, and it's all when you're driving these cars, and you- Was he covered under the union's insurance? The union had some kind of policy here, but that's not always the case. There's many cases where there's a policy or a minimum policy. That policy paid benefits to- The widow received some benefits from that policy. That's correct, Your Honor. Counsel, you're significantly over time, and I know you wanted to reserve some. I'm gonna reserve my rebuttal, Your Honor, thank you. Well, you don't have any, so- Oh, I used the whole 15 minutes? You're over. So for planning purposes, we'll put two minutes on the clock when you come back. That's all right, you're not the first person to do that. We'll hear from opposing counsel, please. We took you over with our questions, so it's fine. Okay. Thank you. Or I'll give them five minutes of my time. May it please the Court, Ralph Spooner appearing on behalf of State Farm Mutual Automobile Insurance Company. Senior Judge Anna Brown got this case right in terms of the analysis. She correctly applied exclusion 2.A in the State Farm policies, given the undisputed facts in the case. She took the time to compare the wording of the State Farm policy to the Controlling Oregon Statute, ORS 742.504. She found the policy language in the State Farm policies virtually identical to the statute. So we don't have a situation here where the analysis that counsel is suggesting exists. His analysis is simply flawed. A careful reading of the policy and the statute, as Judge Brown noted in her opinion, the language is virtually identical. I could go through it for you, but I won't unless you want me to. I don't think there are any questions about that. My colleagues are not shrinking violet, so they'll let me know if I'm wrong about that. But I would appreciate knowing whether you think there is any Oregon case that has applied Erickson in the way opposing counsel is arguing. I don't. I mean, if you look at it, if you set up a hypothetical argument that is not borne out by the facts in this case, and then the argument says, in our view, the policy in question provided less favorable coverage than the model policy using the motorcycle example or the substitute vehicle example, the argument fails at the point where then the suggestion to this court is, well, then coverage is just afforded. It's almost like a forfeiture of the exclusion 2.8 clause for some hypothetical reason that doesn't exist. And there's no Oregon case that supports the application of the way counsel wants to argue. Is there any Oregon case that rejects it? I'm sorry, I didn't- Is there any Oregon case that rejects it? Rejects that- Well, I wouldn't say in the sense of rejecting it. I think what we have is we have Oregon cases that are instructive on how to analyze a statute depending on what the statute says. And in this case, the comparison has always been since roughly 1967, I believe, when the model statute was enacted. This particular language, furnished for regular use, existed even before the model statute. But when that was adopted, what the courts do is they first look at the statute, the analytical framework, and the question is, does the statute answer the question? And in this case, it clearly does. This statute hasn't changed for almost 60 years. It was in effect before I started practicing law. So the starting point in the analysis is look at the statute. The statute is clear. There isn't any ambiguity in the statute. So you would apply the language of the statute to the facts in the case. Counsel, counsel, could I ask you, if there were in another hypothetical, let's say another plaintiff comes along and successfully convinces a court that an exclusion is overly broad somehow as compared to the policy in the statute, it seems there'd be a standing problem. There'd be a failure of redressability, and I noticed there's no standing argument here in this case. No, there isn't, and I think your observation is correct. Well, no, because if the consequence under Oregon law was that part of the policy, that exclusion became invalid, that would favor the insured, and he would prevail rather than losing. So he doesn't have a standing problem because- But that presupposes that there, we're going at this the same way. That presupposes that there's Oregon law indicating that the entire exclusion is invalidated, whether the person is implicated or not. Well, I- You just have 10 minutes left on your clock, so I was floating an interesting question, but it's not one that's raised here by the facts of this case, so. What is your response to- I think the answer is, if it was and it was invalidated, then the parts of the model statute would be read into the policy, which is what Erickson did. That's what the Erickson court did, and then- I thought that's what Erickson refused to do. Pardon? I thought that's what Erickson refused to do. It's what the Court of Appeals did in Erickson. Correct, but- That's his argument. Yes. That's opposing counsel's argument. That's his argument, but we're, you know, we're simply talking hypothetical situations here at this point. I mean, this isn't directed at this case, but I'm trying to answer the question, what happens in- What doesn't happen is that something gets read into the policy. That's the one thing Erickson says, right? That's what Erickson says. Those parts of the policy are invalidated, and you would look then to the model statute to determine what the policy should say. You're not going to forfeit coverage in that situation. They forfeit an exclusion. I thought they do. That's opposing counsel's argument is you forfeit the ability to exclude. I know that's the argument. That's why I said- Well, I think that's what Erickson said, isn't it? No, that isn't what Erickson says. Erickson says those, that part of the policy is invalidated. Right, right, right. So there's no exclusion. But it isn't a forfeiture in the sense of you somehow then apply coverage. You still have to go to the next step and then say, if those sections are invalidated, then how is the policy read at that point? And I think Erickson would look to the model statute. I said specifically not. I think we disagree with the bottom line in Erickson. I'm not sure it matters here, but my view of Erickson is that's what they did not allow. The exclusion. I think opposing counsel's entire argument is if the exclusion's invalid, State Farm doesn't get to enforce it full stop. That's his argument. And that's correct under Erickson. And the question is, invalid as to whom? In other words, it's how broad that principle is. But his basic point is correct, that the exclusion is then gone and the coverage is still there. So yes, in that sense, if you want to call it a forfeiture, it's a forfeiture. It seems to me the reason we don't have Oregon case law interpreting this hypothetical that we're talking about is because the statute, the first line in the statute prevents it from doing so. The first line in the statute talks about whether or not the UIM coverage is going to afford the same, must afford the same coverage to the insured. And that's a defined term. It's this insured, not some hypothetical insured. We don't. We don't have a case that addresses the argument that counsel is advancing saying, and then what happens as far as the coverage. But as I pointed out in the briefing, in my view, he misreads and misapplies Erickson as it applies to this case, because we don't have that set of facts. Right. Could you, turning to the facts, what is your best argument about whether or not this vehicle was supplied for regular use? Well, the best argument, I think, just starts with the language of the policy and the statute. So you just start out, as Judge Brown pointed out, they're identical. Then you get into, well, what is the phrase furnished for regular use? How has that been interpreted under Oregon law? We start with Wallace. We cited the Anderson case. An intermediate appellate court decision is still good law. It hasn't been overturned by the Oregon Supreme Court. Counsel can argue, well, I think it would be if the court reviewed the case, but it wasn't reviewed. And I think the key is trying to look at that phrase, furnished for regular use. It's the right to use the vehicle. That's what Wallace tells us. That's what's most instructive. It isn't- In this case, the policy and the statement of uncontested facts are slightly in conflict in that regard, because the union use policy says you can only use it for personal use if it's more efficient, something like that. And the other says, the uncontested fact says that you can use it for personal use if, let's see, something like, as long as you're not interfering with the business use. So it's not the same. Does that matter? It was, the uncontested fact says it was furnished to Kyle Eschews for work travel and incidental personal matters that did not disrupt the work use. And the union policy says, employer vehicle use policy says that it is used, it can only be used for personal use. Let's see. Um. In the event it is more efficient for an employee to drive a local 3737 vehicle for personal use than to be credited with an additional income. So they're not really the same. Doesn't matter which is right. I don't think that, it's not critical when we look at Oregon law, whether there was incidental personal use available or not. Fact is, Mr. Estes had the right to use the vehicle primarily for business purposes if you look at the limitations. And he had the right to use it for personal use. Incidental. But here's. Suppose he had no right to use it for personal use. Does that matter? I don't think it would make a difference because he was operating the truck on the job at the time of this accident. So I don't think it changes it. But there's nothing in the statute that requires the insured, in this case, to have full control of the vehicle for both business use and personal use. The statute just doesn't address it at all. Anderson says, I think your point about the statute is well taken, sir, but Anderson says that nothing in the provision requires the vehicle to be totally under the insured's control and available for both personal and business use to be considered, quote unquote, furnished for regular use. Sure, and Anderson was a case where the use of the truck was limited to business use. It wasn't even a question of did that driver have the right to use it for personally. It was like a delivery truck or something, right? Some sort of a commercial vehicle. Yeah. You know, the point I think is if we get to what's the reason behind the policy? If you look back at Wallace or Anderson, I mean, I think the point from an insurance company's perspective is this. You didn't collect a premium for the truck that Mr. Estes was driving. The fact that he was driving that truck increases the exposure, at least as far as the risk that the insurance company assumes. And when it did write these two policies, they were for automobiles that Mr. Estes had. But the company didn't assume a risk of any vehicle he might drive that was furnished for his regular use. That's the purpose, I think, if you go back legislatively and say where did this statute come from? What was the reason why the Oregon legislature enacted it? It was to clearly define what risk and what was the premium being paid for. Thank you. Thank you. Counsel, you've got two minutes. Yeah, I'll be brief. And your honors, I would just point you back to the statute and how we interpret statutes in Oregon under PGE v. Boley. We do not insert what has been omitted or omit what's been inserted. And the court has suggested that there's a restriction on the enforceability rule, which is if it's being applied in this case. The statutory language says this. Every policy shall provide UM coverage that in each instance is no less favorable in any respect, not just in this case, to the insured. And the insured is a defined term, is it not? An insured is somebody who is the named person under the policy. Named insured, right. Yeah, and that's all that is. And so what we have here is we don't have, you have to insert what's been omitted to say, as in this case, it is less favorable because it provides less coverage, your honors. And it's not enforceable. And Erickson said, quote, any provision that are less favorable, not that deny coverage specifically in this case, but less favorable to an insured than the model provisions are unenforceable. Any. So what we're doing, we're going to this place of inserting qualifications that the legislature did not put in. And in PGE versus BOLI, we don't do that. It's in any respect. And Smith, this court got it right. An insurer may not omit a model provision, add a provision that is generally less favorable, generally, not for this case, less favorable to insureds and thereby unenforceable, and then prevail because had they added the original policy in the first place, they could have still denied coverage. That's where we are here. We're applying the statutory text, and each instance is no less favorable in any respect. And that's when it's not enforceable under VEGA. This is an unpublished, it's a mem just. And Anderson, we're wrong if you agree that Anderson was right. I mean, we lose under that. I concede that issue, but I don't think Anderson's right. We have to interpret statutes in a certain way, and Anderson didn't walk through those ways. Thank you, Your Honors. Thank you. Thank you both for your helpful arguments. We'll take that matter under submission, and we're going to stand in recess for the day.
judges: BERZON, TALLMAN, CHRISTEN